# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

DARRELL BREEDING

                Petitioner,          :      Case No. 3:26-cv-00065

  - vs -                         District Judge Walter H. Rice
                                    Magistrate Judge Michael R. Merz

BRIAN BAKER, WARDEN,
  London Correctional Institution,

                                   :
            Respondent.

---

# REPORT AND RECOMMENDATIONS

---

This is a habeas corpus case, brought by Petitioner Darrell Breeding with the assistance of counsel. It is now ripe for analysis and a recommendation on the Petition (ECF No. 1), a Memorandum in Support (ECF No. 3), the State Court Record (ECF No. 7), Respondent's Return of Writ (ECF No. 8), and Petitioner's Amended Reply (ECF No. 13).

On the question of whether Petitioner has exhausted all available state court remedies on his claims, the undersigned recently decided that a motion for new trial in the Ohio courts would be futile. Both parties concurred in that finding (See ECF No. 15 & 16). Thus the case will not be stayed to allow such a filing (ECF No. 17) and is ripe for consideration on the pleadings.

**Litigation History**

In its May, 1995, term, the grand jury of Clark County, Ohio, returned an indictment

1

charging Petitioner with one count of causing physical harm to another by use of a firearm in violation of Ohio Revised Code § 2903.11, one count of knowingly discharg[ing] a firearm at or into an occupied structure that is a permanent or temporary habitation of an individual, to-wit: 1157 Vester, Springfield, Ohio, in violation of Ohio Revised Code § 2923.161, and one count of tampering with evidence in violation of Ohio Revised Code § 2921.12 (Indictment, State Court Record, ECF No. 7, Ex. 1). After withdrawing his NGRI plea, Breeding pleaded guilty to felonious assault in return for dismissal of the other two counts. He appealed to the Ohio Second District Court of Appeals which reversed and remanded the case. *State v. Breeding*, 1999 WL 89947[1](Ohio App. 2d Dist. 1999).

On remand the case was tried to a jury which was unable to reach a verdict on the felonious assault charge, but convicted Breeding on counts two and three. He was then sentenced to seven to ten years imprisonment. Breeding again appealed to the Second District, raising seven assignments of error, all of which the Second District overruled. *State v. Breeding*, 2001 WL 62381[2] (Ohio App. 2d Dist. 2001). The Ohio Supreme Court declined to exercise jurisdiction over a subsequent appeal. *State v. Breeding,* 91 Ohio St. 3d 1526 (2001).

Breeding failed to appear for execution of sentence and a capias was issued for his arrest on January 31, 2001 (State Court Record, ECF No. 7, Ex. 48). The capias was executed in Michigan over twenty-four years later and Breeding was returned to Clark County on August 27, 2025 (Entry, State Court Record, ECF No. 7, Ex. 50). Breeding filed his Petition in this Court on February 27, 2026, pleading one ground for relief:

---

[1] Although the Court prefers to use the Ohio official citation form, 2026-Ohio-xxxx, this decision is sufficiently old that it does not have such a citation reported in Westlaw.
[2] See footnote 1.

2

> **Ground One:** The conviction is not supported by sufficient evidence.
>
> **Supporting facts:** The evidence at trial indisputably showed that Mr. Breeding discharged a firearm **inside** the habitation's attached garage, which is part of the habitation.

(Petition, ECF No. 1, PageID 5, emphasis supplied).

# Analysis

In his sole ground for relief, Breeding claims his conviction is not supported by sufficient evidence.  Breeding was charged and convicted under Ohio Revised Code §  2923.161 which provides "(A) No person, without privilege to do so, shall knowingly do any of the following:  (1) Discharge a firearm **at or into** an occupied structure that is a permanent or temporary habitation of any individual."(emphasis supplied)  This language has not been modified since it was adopted well before the events in suit. The case turns on correct interpretation of that language.

Breeding raised an insufficiency of the evidence claim on direct appeal, to wit, that there was insufficient evidence on the *mens rea* element of knowingly.  The Second District made the following findings:

> The evidence presented by the State demonstrated that during the early morning hours of August 6, 1995, Darryl Breeding went to the home of his girlfriend, Diana Donaldson, at 1157 Vester Avenue, in Springfield. Breeding used his key to enter the residence. When Breeding called out to Donaldson and received no reply, he became concerned and took out the gun Donaldson kept at the residence for protection.
>
> Breeding entered the attached garage and discovered Donaldson, undressed, inside her car with another man, Brian Cummins.

3

> Breeding later told police he became angry and fired a shot at Donaldson to frighten her as she ran through the door from the garage into her residence. Breeding also pointed the gun at Cummins. He threatened to kill him and ordered Cummins to leave. Cummins left and immediately called police.

*State v. Breeding, supra,* *1.

Judge Grady's opinion for the Second District continues:

> Applying the correct legal standard to this issue of sufficiency of the evidence, which is a question of law, we conclude that the State's evidence, if believed, is evidence from which reasonable minds could conclude that all of the elements of the offense were proved beyond a reasonable doubt.
>
> Brian Cummins testified that he remembered Diana Donaldson going through the door from the garage into her house when the shot was fired by Breeding, and that the bullet struck the door. Sgt. Ayres testified that Breeding told her that he was upset at finding Donaldson with another man and he fired a shot at Donaldson to frighten her as she ran through the door from the garage into her house. Police discovered a bullet hole in that door and the spent bullet on the other side of that door, just inside the house.
>
> Viewing the foregoing evidence in a light most favorable to the State, as we must for purposes of Crim.R. 29 motion, we conclude that a rational trier of fact could find that all the elements of discharging a firearm into a habitation were proved beyond a reasonable doubt. Breeding's conviction is supported by legally sufficient evidence and the trial court properly overruled his motions for acquittal.

*Id.* at *3.

Breeding does not dispute the Second District's findings of fact. Indeed he relies on them to establish his case. When the statute is rightly interpreted, he says, the findings show he fired **within** a habitation rather than **into** a habitation because he fired from within an attached garage.

Breeding did not ask the Second District to adopt his reading of Ohio Revised Code § 2923.161 although of course that reading was as available to him then as it is now since the statutory language has not changed. Nor can he presently ask any Ohio court to adopt his

4

interpretation because statutes of limitation have long since passed on the state remedies of post-conviction relief or for ineffective assistance of appellate counsel[3].

In defending the conviction, Respondent claims the Petition is barred by the statute of limitations (Return, ECF No. 8, PageID 521, *et seq.*), by procedural default in presenting the claim to the Ohio courts (*Id.* at PageID 529-32), and is without merit (*Id.* at PageID 534-38).  Petitioner replies that, because he is actually innocent, neither the statute of limitations nor procedural default apply to him.  On the merits he relies on the same argument:  when the statute is correctly interpreted, it does not apply to the conduct of which he was convicted.

If there were a decision from the Ohio Supreme Court or the Ohio Second District Court of Appeals accepting Petitioner's interpretation of Ohio Revised Code § 2923.161, that interpretation would be controlling here.  But there is no such decision.

Breeding relies on a case decided after his appeal became final, *State v. Moorer*, 176 Ohio App.3d 398 (Ohio App. 1st Dist. 2008), where the First District Court of Appeals held that

> At trial, the state presented evidence that Moorer had fired a gun **while inside Ramona Hill's apartment.** Viewing this evidence in a light most favorable to the prosecution, we cannot say that the state proved the essential elements of R.C. 2923.161(A)(1) beyond a reasonable doubt. The plain language of the statute indicates that the proscribed conduct of "discharging a firearm" must occur from outside the dwelling that is fired "at or into."

*Id.* at 399-400 (emphasis supplied).

The *Moorer* court in turn relied on *State v. Nash*, 2003-Ohio-230 (Ohio App. 5th Dist. 2003). In that case a husband and wife argued about the husband's girlfriend. Husband retrieved a gun and fired it twice inside the house. The Fifth District held the statute did not cover shooting inside the house:

---

[3] As noted above, both parties have agreed that attempting to present Breeding's claim on a delayed motion for new trial would, at this time, be a futile act.

5

{¶ 17} As is stated above, R.C. 2923.161(A)(1) prohibits an individual from discharging a firearm "at or into an occupied structure". In contrast, subsection (A)(2) of R.C. 2923.161(A)(2) prohibits an individual from discharging a firearm "at, *in* or into" a school safety zone. (Emphasis added). Had the drafters of R.C. 2923.161 intended to prohibit discharging a firearm *in* a habitation, they could have, and presumably would have, included the same language in subsection (A)(1) as in (A)(2). The expression of one thing implies the exclusion of another ("*expressio unius est exclusio alterius*"). See, e.g., *Green, Inc. v. Smith* (1974), 40 Ohio App.2d 30, 32, 317 N.E.2d 227, 229. Since the word "in" is not contained in R.C. 2923.161(A)(1) and since there is no evidence that appellant discharged his firearm at or into a habitation, appellant's conviction for improperly discharging a firearm at or into a habitation is against the manifest weight of the evidence.

*Id.* at ¶ 17.

Breeding relies on cases which have found that an attached garage meets the criteria of a habitation for purposes of the burglary statute. See *State v. Trikilis*, 2005-Ohio-4266, ¶ 30 (Ohio Ct. App. 2005) (citing cases); *see also State v. Dowell*, 166 Ohio App. 3d 773, 776 (Ohio Ct. App. 2006) ("an attached garage meets the requirements of a permanent or temporary habitation"). (Memorandum, ECF No. 3, PageID 27).

*Trikilis* actually holds that trespass in an attached garage satisfies the "trespass in a habitation" element of the burglary statute. The burglary statute and the statute in suit here address different evils, conceptually different crimes: trespass in an occupied structure to commit theft and shooting into an occupied structure. The fact that the same word "habitation" was used by the General Assembly does not mean it should be read as meaning the same thing in both statutes. Meaning always depends on context and the General Assembly is not required or assumed to use a word unequivocally. *State v. Dowell*, also cited by Petitioner, is also a case defining an attached garage as a habitation for purposes of the burglary statute.

In his Reply[4], Breeding relies upon the recently decided case of *State v. Abdi*, 2026-Ohio-91 (Ohio App. 10th Dist. Jan. 13, 2026)(Reply, ECF No. 11, PageID 547). The Magistrate Judge finds the case actually supports the Respondent's position. Abdi was charged in connection with firing his handgun multiple times from the second floor breezeway of the Wellington Woods Apartment Complex in Columbus. During the investigation, it was learned that one of the bullets went through appellee's apartment floor and entered the apartment below. *Id.* at ¶ 3. The Tenth District held this was sufficient to support a charge under Ohio Revised Code § 2923.161, the statute in suit here. That is to say, it constitutes the offense of discharging a firearm into a habitation when one fires a gun from one's own apartment into the apartment below in the same building.

Petitioner also relies on *State v. Maxey*, 2021-Ohio-438 (Ohio App. 8th Dist. Feb. 18, 2021), but that decision also supports Respondent's position. One of the counts of conviction under Ohio Revised Code § 2923.161 upheld on appeal was for firing from one apartment in a building into the apartment directly above.

We thus have no definitive Ohio court interpretation that fits the facts of this case and applies Petitioner's interpretation to them. We must then interpret the statute ourselves. In doing so we ought to follows the wisdom of Learned Hand: "In construing a statute, [a] court must remember that statutes always have some purpose to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham*, 148 F.2d 737, 739 (2nd Cir. 1945). Purposive interpretation, of course, must be limited by the words used. In their guide to statutory interpretation, Henry Hart and Albert

---

[4] The tone of the Reply is regrettable. Counsel writes "the Respondent hides behind procedural arguments to insist that an innocent, elderly man should remain incarcerated. Putting aside the unseemly nature of that request, . . . (ECF No. 11, PageID 545). If Petitioner is a frail elderly man in prison, it is only because he gave himself a twenty-four year stay of execution.

Sacks write;

> In interpreting a statute a court should:
>
> 1. Decide what purpose ought to be attributed to the statute and to any subordinate provision of it which may be involved; and then
>
> 2. Interpret the words of the statute immediately in question so as to carry out the purpose as best it can, making sure, however, that it does not give the words either (a) a meaning they will not bear, or (b) a meaning which would violate any established policy of clear statement.

Hart and Sacks, THE LEGAL PROCESS (Eskridge & Frickey ed. 1994), p. 1169.  Preventing one person from shooting at another person is a plain purpose of Ohio Revised Code § 2923.161, but "into" cannot be stretched to cover "inside," as *Nash* and *Moorer* hold.

The precise evil at which Ohio Revised Code § 2923.161 is directed is unknown.  The Court has not been favored with any legislative history.  There is some suggestion it was intended to deal with the phenomenon of drive-by shootings, but the statute is not limited to shootings from cars.  Petitioner suggests no purposive line between a shooting into a habitation from entirely outside the building and a shooting into a habitation from inside an attached garage.  Because the language of the statute is broad enough to cover what Breeding did, the Court should interpret the statute to cover his conduct because preventing that conduct comes well within the purpose of the statute.  The Petition should therefore be dismissed on the merits.

Having reached the merits, the Court need not decide the statute of limitations or procedural default defenses.  Briefly, however, the undersigned notes that only a finding of actual innocence could save the Petition from either the limitations or procedural default defense.  Actual innocence means factual innocence, not legal innocence. *Bousley v. United States,* 523 U.S. 614 (1998). Proof of actual innocence requires submission of new evidence. *McQuiggin v. Perkins*, 569 U.S. 383 (2013).  Petitioner has submitted no new evidence at all.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice.  Because the Petition presents a novel question of interpretation of Ohio law with which reasonable jurists could disagree, it is also recommended that Petitioner be granted a certificate of appealability on the questions whether he has presented (1) a cognizable claim of insufficiency of the evidence and (2) whether he has presented a cognizable claim of actual innocence to excuse his untimeliness and procedural default.

July 9, 2026.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.